```
         IN THE UNITED STATES DISTRICT COURT FOR THE
                  EASTERN DISTRICT OF OKLAHOMA

KELLIE S. BOREN,                   )
                                   )
            Plaintiff,             )
                                   )
                                   )   Case No. CIV-20-234-RAW-KEW
                                   )
COMMISSIONER OF THE SOCIAL         )
SECURITY ADMINISTRATION,           )
                                   )
            Defendant.             )
```

## REPORT AND RECOMMENDATION

Plaintiff Kellie S. Boren (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined she was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 53 years old at the time of the ALJ's decision. She has at least a high school education and no past relevant work. Claimant alleges an inability to work beginning on March 23, 2013, due to limitations resulting from a heart condition, hepatitis C, problems with breathing, memory, and her ankles.

### Procedural History

On May 31, 2018, Claimant protectively filed for supplemental security income benefits pursuant to Title XVI (42 U.S.C. § 1381, *et seq*.) of the Social Security Act. Her application was denied initially and upon reconsideration. On October 22, 2019, ALJ Christopher Hunt conducted a hearing in Tulsa, Oklahoma, at which

Claimant testified. On October 30, 2019, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on May 12, 2020, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform light work with additional limitations.

### Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to properly consider the entire record and all of Claimant's impairments at step two of the sequential evaluation, and (2) reaching an improper step-five determination.

### Step Two and Step Four Analysis

In his decision, the ALJ found Claimant suffered from severe impairments of coronary artery disease status post bypass and stents and chronic pulmonary artery disease. (Tr. 17). He determined Claimant could perform light work with additional limitations. She could lift ten pounds frequently and no more than twenty pounds occasionally and sit, stand, or walk for six hours in an eight-hour workday. Claimant could occasionally climb stairs

4

and ramps, would need to avoid extreme heat and cold, and would need to avoid open flames, furnaces, and walk-in freezers. She could be exposed to no more than a normal level of exposure to gases, fumes, noxious odors, or poor ventilation, with normal as the amount generally found in an office or commercial setting. (Tr. 19).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform the representative jobs of bench assembler, office helper, and garment sorter, all of which the ALJ found existed in sufficient numbers in the national economy. As a result, the ALJ concluded Claimant has not been under a disability since May 31, 2018, the date her application was filed. (Tr. 26).

Claimant argues that the ALJ failed at step two because he did not consider all of her impairments. She first contends that the ALJ failed to determine whether her right eye blindness was a severe impairment at step two and whether it resulted in functional limitations at step four. She bases her argument primarily on a finding by consultative examiner Subramamam Krishnamurthi, M.D., during a consultative examination of Claimant on September 5, 2018. During the examination, Dr. Krishnamurthi examined Claimant's eyes and noted that "[s]he does not wear glasses" and "wears contacts on the left eye." He noted her vision in the left eye was 20/40 and that "[t]he right eye is blind." (Tr. 21, 320).

5

A claimant "bears the burden to prove her disability." *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007). It is a claimant's burden to "make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists." *Wall v. Astrue*, 561 F.3d 1048, 1063 (10th Cir. 2009) (quotation omitted). Although the ALJ has a duty to make sure that an adequate record is developed consistent with issues raised, the duty is not unqualified. *See Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993) (recognizing ALJ's duty "to ensure that an adequate record is developed during the disability hearing consistent with the issues raised."). Moreover, an ALJ normally may rely on the claimant and "counsel to identify the issue or issues requiring further development." *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004).

Claimant's application indicates that she is not blind. (Tr. 184). In her disability report, Claimant did not include vision issues when listing her medical conditions. (Tr. 205). In her function report, Claimant did not assert that any type of vision impairment limited her ability to work, and when asked to identify abilities affected by her illnesses, injuries, or conditions, Claimant did not indicate she had any difficulty seeing. (Tr. 222, 227). Claimant stated on the function report that she wore prescribed glasses/contacts all the time except when sleeping.

(Tr. 228). Moreover, Claimant was not asked any questions by her attorney and did not offer any testimony at the administrative hearing that she suffered from a vision impairment or any functional limitations from such an impairment. (Tr. 36-52).

Further, other examinations of Claimant's eyes do not suggest that she suffered from a vision impairment. In May of 2017, Claimant's eyes were noted to be "unremarkable bilaterally" with no vision changes. (Tr. 279-80, 472-73). Upon examination in November of 2017, Claimant's eyes were noted to be "normal." (Tr. 21, 309). Even at her examination with Dr. Krishnamurthi in September of 2018, Plaintiff made no complaint of limitations related to her eyes, and Dr. Krishnamurthi did not assess her with a vision impairment or include any functional limitations related to her vision. (Tr. 319-26). Moreover, just ten days after her examination by Dr. Krishnamurthi, Claimant underwent a consultative psychological examination with Peter Ciali, Ph.D., on September 15, 2018. He noted in his report that Claimant wore reading glasses. (Tr. 328).

Claimant did not allege a vision impairment and never complained to examiners or suggested during the administrative hearing that she was disabled or suffered any functional limitations associated with a vision impairment. *See Wall*, 561 F.3d at 1063 ("Because neither Claimant, nor her counsel, argued that memory loss contributed to Claimant's alleged disability, the

7

ALJ did not err, under our precedents, in declining to develop the record in this regard."). Because Claimant has failed to meet her burden, the Court finds no merit to her argument that the ALJ should have considered her vision impairment as a severe impairment.

Claimant also argues that even though the ALJ determined her anxiety was a non-severe impairment, he failed to include mental functional limitations in the RFC. Once it is established that a claimant has a medically determinable impairment, it must be determined whether the impairment is severe. *See* 20 C.F.R. § 416.921. When evaluating the severity of a mental impairment, the ALJ is required to rate the degree of functional limitation in four broad areas of functioning, including (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. The ALJ uses a five-point scale when rating the four areas of functioning – none, mild, moderate, marked, and extreme. *Id. at* § 416.920a(c). After rating the degree of functional limitation resulting from a mental impairment, the ALJ determines the severity of the impairment. *Id.* at § 416.920a(d). A rating of "none" or "mild" generally results in a conclusion that the "impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the] ability to do basic work activities[.]" *Id.* at § 416.920a(d)(1).

The ALJ determined Claimant's anxiety was a medically determinable impairment. Because of this determination, he considered the four functional areas for evaluating mental disorders. He determined Claimant had a mild limitation in the area of understanding, remembering, or applying information. The ALJ relied upon Claimant's examination with Dr. Ciali in September of 2018, wherein Dr. Ciali determined Claimant's ability to remember information and understand instructions was intact, and a subsequent finding from October of 2018 that Claimant's short and long term memory were intact. (Tr. 330-31, 18, 347). The ALJ next determined Claimant had a mild limitation in the area of interacting with others. He again relied upon findings from Dr. Ciali's examination of Claimant, including that although Dr. Ciali determined Claimant had a mild deficit in her ability to socially interact, her affect was described as "bright." (Tr. 18, 328, 331). Moreover, later records described Claimant's mood as normal with an appropriate affect and as "euthymic." (Tr. 18, 347, 574). The ALJ further considered that Claimant was diagnosed and began receiving treatment for anxiety in 2019. (Tr. 18, 570-72).

The ALJ also found that Claimant had a mild limitation in the area of concentration, persistence, and maintaining pace. He noted that although Claimant reported a slight problem concentrating, she had fair attentional capacity during her examination with Dr. Ciali, scored 25 out of 30 on the Montreal Cognitive Assessment,

and Dr. Ciali determined her ability to maintain sustained concentration was intact. (Tr. 18, 328, 330-31). He further determined Claimant had a mild limitation in the functional area of adapting and managing oneself. The ALJ referenced Claimant's reports that she had problems getting around physically and completing household tasks, but she also denied difficulty with getting dressed, washed, or caring for her own appearance. He relied upon Dr. Ciali's observations that Claimant was casually dressed with adequate hygiene and grooming. Dr. Ciali also found Claimant's insight and judgment to be fair, with a mild deficit in her ability to adapt. (Tr. 18, 328, 330-31).

After considering the four functional areas, the ALJ concluded Claimant's "medically determinable mental impairments cause[d] no more than 'mild' limitation in any functional areas <u>and</u> the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities[.]" He determined Claimant's anxiety was non-severe. (Tr. 18).

To the extent Claimant contends her anxiety should have been included as a severe impairment at step two, where an ALJ finds at least one "severe" impairment, a failure to designate another impairment as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments

10

without regard to whether any such impairment, if considered separately, would be of sufficient severity. *Brescia v. Astrue*, 287 Fed. Appx. 626, 628-629 (10th Cir. 2008). The failure to find that additional impairments are also severe is not cause for reversal so long as the ALJ, in determining Claimant's RFC, considers the effects "of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'" *Id.*, quoting *Hill v. Astrue*, 289 Fed. Appx. 289, 291-292 (10th Cir. 2008).

The ALJ considered Claimant's anxiety in the summary of the medical and opinion evidence when assessing the RFC. He discussed in detail the findings from her mental examination by Dr. Ciali, noting, in part, that she completed a Patient Health Questionnaire and Generalized Anxiety Disorder Questionnaire, scoring a zero on both. She also denied experiencing panic, mania, hypomania, or psychosis. Claimant scored a 25 out of 30 on The Montreal Cognitive Assessment, with a score of 26 or higher considered normal. Dr. Ciali's impression was to rule out alcohol use disorder. (Tr. 22, 328-31). The ALJ found Dr. Ciali's opinions persuasive that Claimant could manage her own financial affairs and that she had mild deficits in her ability to socially interact and adapt, but intact ability to understand information, understand instructions, and maintain sustained concentration. (Tr. 24).

The ALJ also considered treatment records from April 1, 2019, at which Claimant reported nervousness and insomnia. She was not currently taking any medication for anxiety or depression, but she had taken medication in the past without improvement. She was prescribed medication for insomnia and anxiety and encouraged to seek mental health treatment at CREOKS. (Tr. 23, 570-72). He noted Claimant's treatment records were consistent with the other evidence of record indicating that she did not receive mental health treatment until April of 2019. (Tr. 24).

The ALJ further considered the opinion evidence of the state agency physicians who reviewed the record and determined that Claimant did not suffer from a medically determinable mental impairment. (Tr. 25, 85-86, 101-103). Based upon Claimant's diagnosis of anxiety, the ALJ determined her anxiety was a medically determinable mental impairment, but he determined it was non-severe. The ALJ did not include mental limitations in the RFC because Claimant denied mental health impairments in November of 2017 and continued to deny them in September of 2018. (Tr. 25, 308-10, 328-32, 345-48).

No error is found, as the ALJ's decision demonstrates that he did not simply disregard Claimant's anxiety when assessing the RFC. The Court will not re-weigh the evidence or substitute its judgment for that of the Commissioner. *See Casias*, 933 F.2d at 800; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

**Step-Five Determination**

Claimant argues that if the ALJ had properly considered her anxiety and right eye blindness in the RFC, he would have included certain limitations in the hypothetical questions to the VE, which would have precluded her from performing the jobs of garment sorter, office helper, and bench assembler.

"Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991). In positing a hypothetical question to the VE, the ALJ need only set forth those physical and mental impairments accepted as true by the ALJ. *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990). Additionally, the hypothetical questions need only reflect impairments and limitations borne out by the evidentiary record. *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996).

The Court finds no error in the ALJ's step-five determination. The ALJ appropriately considered Claimant's right eye blindness and anxiety, including those limitations he found to exist in the hypothetical questions to the VE. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) (finding an ALJ's hypothetical questioning of the VE provided an appropriate basis for a denial of benefits because the question "included all the limitations the

ALJ ultimately included in his RFC assessment."), citing *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993).

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be AFFIRMED. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 25th day of January, 2022.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE